UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHAIM B. TESCHER,

                              Plaintiff,

            -against-

EXPERIAN INFORMATION SOLUTIONS,
INC., et al.,

                              Defendants.

**MEMORANDUM OPINION
AND ORDER**

21-CV-02266 (PMH)

PHILIP M. HALPERN, United States District Judge:

Chaim B. Tescher ("Plaintiff") brings this action against Experian Information Solutions,

Inc. ("Experian"), PHH Mortgage Services ("PHH"), Credit Plus Inc. ("Credit Plus"), and

LoanDepot.com LLC ("Defendant") for violating the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. § 1681 *et seq*. (*See* Doc. 25, "FAC"). Experian, PHH, and Credit Plus have filed Answers

to the First Amended Complaint. (*See* Doc. 29 (Experian); Doc. 30 (PHH); Doc. 31 (Credit Plus)).

Defendant, on the other hand, presents two motions for adjudication.

First, Defendant moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claim

asserted against it. Defendant served its motion papers on July 19, 2021 (Doc. 39; Doc. 40,

"Dismiss Br."), Plaintiff served his opposition brief on August 17, 2021 (Doc. 42, "Dismiss

Opp."), and that motion was briefed fully with service of Defendant's reply memorandum of law

in further support of its motion on August 24, 2021 (Doc. 41, "Dismiss Reply").[1]

Second, Defendant moves under Federal Rule of Civil Procedure 11 for sanctions against

Plaintiff's counsel. Defendant filed those motion papers on August 26, 2021 (Doc. 43; Doc. 44

"Sanction Br."; Doc. 45), Plaintiff's counsel filed his memorandum of law in opposition on

_____

[1] Defendant's reply brief violated Rule 4(H)(ii) of this Court's Individual Practices, which warns that
"[u]nless prior permission has been granted . . . reply memoranda are limited to 10 pages."

September 20, 2021 (Doc. 51, "Sanction Opp."), and that motion was briefed fully with the filing of Defendant's reply papers on September 27, 2021 (Doc. 52, "Sanction Reply").

For the reasons set forth below, the motion to dismiss is GRANTED IN PART and the motion for sanctions is DENIED.

## BACKGROUND

Defendant, at some point, serviced Plaintiff's mortgage account. (FAC ¶ 7). After Defendant began servicing the mortgage account, "[o]n a date better known by [Defendant], but sometime in 2018 or 2019," it transferred its account servicing responsibilities to PHH. (*Id*. ¶ 8). PHH thereafter serviced the mortgage under a different account number. (*Id*. ¶¶ 7, 9). In December 2018—which may be before or after the servicing duties were transferred to PHH—Plaintiff "was 30 days late . . . on his mortgage." (*Id*. ¶¶ 8, 10).

A little less than two years after that late mortgage payment, in September 2020, Plaintiff examined "his Experian credit report, through a report issued by Credit Plus, and learned that both" Defendant and PHH reported the late payment on their respective accounts. (*Id*. ¶ 11). The effect, says Plaintiff, was that his "credit report specifically showed that [he] was late for two accounts, while in fact, [he] was only late for a single account." (*Id*.). Plaintiff maintains that the information is, therefore, "inaccurate and misleading" because "[a] creditor . . . would be misled into believing that [he] was 30 days late on two separate mortgages." (*Id*. ¶¶ 12-13).

Plaintiff complained to Experian in late 2020 about the duplicate reporting of his one late mortgage payment. (*Id*. ¶ 14). Experian, in turn, forwarded the dispute to Defendant and PHH. (*Id*. ¶ 15). Plaintiff asserts that Defendant failed to conduct a reasonable investigation and continued reporting the late mortgage payment, notwithstanding the reality that "Plaintiff's credit reflected that he made a 30[-]day late payment on two accounts instead of one." (*Id*. ¶ 16). Plaintiff complains further that Defendant "failed to mark the account in dispute," despite the fact that both

it and PHH "should have reflected that Plaintiff disputed . . . their reporting[,] given the material misrepresentation concerning Plaintiff's creditworthiness . . . ." (*Id*. ¶ 20).

Plaintiff, with respect to the damages, pled:

> 41. As a direct and proximate cause of [Defendant's] failure to perform its duties under the FCRA, Plaintiff has suffered injury to his credit worthiness and increased difficulty obtaining credit. This includes higher interest rates, and difficulty obtaining a mortgage.
>
> 42. Plaintiff has also suffered embarrassment, humiliation, and other emotional injuries as a result of errors on her [sic] credit report and credit worthiness.

(*Id*. ¶¶ 41-42).

This litigation followed.

## STANDARD OF REVIEW

I.   Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6): Dismissal

The Court notes, at the outset of its discussion as to the proper standard of review, that Defendant argued, *inter alia*, that the claim against it should be dismissed because Plaintiff lacks Article III standing. (Dismiss Br. at 12). Defendant's motion, however, invokes only Federal Rule of Civil Procedure 12(b)(6). (Doc. 39). "Federal Rule of Civil Procedure 12(b)(1) is the proper procedural vehicle for a motion to dismiss for lack of Article III standing rather than Rule 12(b)(6) because it concerns 'the authority of a federal court to exercise jurisdiction.'" *Artists Rts. Enf't Corp. v. Est. of Robinson*, No. 15-CV-09878, 2018 WL 1617890, at *3 (S.D.N.Y. Mar. 29, 2018) (quoting *All for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)); *see also Alphas v. City of New York Bus. Integrity Comm'n*, No. 15-CV-03424, 2017 WL 1929544, at *2 (S.D.N.Y. May 9, 2017) ("Defendants move to dismiss under Rule 12(b)(6), but their Article III standing arguments belong under Rule 12(b)(1) as it implicates subject matter jurisdiction."); *Sullivan v. Ruvoldt*, No. 16-CV-00583, 2017 WL 1157150, at *3 (S.D.N.Y. Mar.

27, 2017). Notwithstanding Defendant's failure to move under Rule 12(b)(1), as both parties have addressed the Court's jurisdiction, the Court considers that branch of Defendant's motion under the proper procedural mechanism: Rule 12(b)(1). *See* 5B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 1350 ("Because of the importance of the Rule 12(b)(1) defense to the proper functioning of the Constitution's distribution of judicial power between the federal and state courts, federal courts should treat an improperly identified motion that actually challenges the court's authority or competence to hear the action as if it properly raised the jurisdictional point."); *see also* Fed. R. Civ. P. 12(h)(3).

### A. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a Rule 12(b)(1) motion, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286

(S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

      B.  <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

C.  Documents Considered on the Motion to Dismiss

The Court, in deciding a Rule 12(b)(1) motion, "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. Indeed, on such a motion, the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue," along with "matters of which judicial notice may be taken." *Malloy v. Pompeo*, No. 18-CV-04756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020) (internal quotation marks omitted). Similarly, on a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)).

In this case, Defendant has submitted to the Court a document dated June 13, 2019, addressed to Plaintiff, and labeled, "Notice of Servicing Transfer." (Dismiss Br. at 19-22).

Defendant argues that the Court may consider this document in deciding the motion to dismiss. (*Id*. at 4-7). The Court disagrees. First, the Court declines to consider this extraneous document because it is annexed improperly as an exhibit to Defendant's memorandum of law instead of an affidavit, in violation of Local Civil Rule 7.1(a)(3). *Walsh v. Caliber Home Loans, Inc.*, No. 19-CV-08966, 2021 WL 124684, at *1 (S.D.N.Y. Jan. 13, 2021) ("Defendant's motion does not include a supporting affidavit and the exhibits submitted to the Court for consideration are attached only as exhibits to Defendant's memorandum of law in support of its motion to dismiss. Failure to comply with the Local Rules is a sufficient ground to warrant denial of a motion." (internal citation omitted)). Second, even if the Court were to overlook the procedurally defective way in which this hearsay document was submitted, and consider its contents, the document presents far more factual questions than it claims to solve. For example, even if this document is what Defendant purports it to be, it does not establish: (1) whether Plaintiff received the document; (2) when Plaintiff received the document; or (3) when PHH began reporting the late payment. Indeed, these uncertainties are highlighted by the substantive factual arguments advanced by both parties, through counsel, in their memoranda of law. (*See generally* Dismiss Br.; Dismiss Opp.). The Court cannot wade into fact and credibility determinations on a motion to dismiss by considering a hearsay document that was not mentioned in, referenced in, relied upon in bringing, or actually integral to the First Amended Complaint.

The Court, consequently, will not consider the extraneous document.

II.   <u>Federal Rule of Civil Procedure 11: Sanctions</u>

"A pleading, motion or other paper violates Rule 11 either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a

good faith argument for the extension, modification or reversal of existing law." *Parnoff v. Fireman's Fund Ins. Co.*, 796 F. App'x 6, 8 (2d Cir. 2019) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 11(b).

"When deciding whether to grant Rule 11 sanctions, the Court applies an objective standard of reasonableness, and looks to, among other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and whether the claim was utterly lacking in support." *Melohn v. Stern*, No. 20-CV-05536, 2021 WL 1178132, at *3 (S.D.N.Y. Mar. 29, 2021) (quoting *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 526 (S.D.N.Y. 2017)); *see also StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) ("[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." (internal quotation marks omitted)); *Ferrand v. Mystique Brands LLC*, No. 20-CV-05933, 2021 WL 119572, at *13 (S.D.N.Y. Jan. 13, 2021) (noting that Rule 11's objective analysis is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments" (quoting *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999)).

Rule 11 is a powerful weapon and "should be reserved for extreme cases, and all doubts should be resolved in favor of the signing attorney." *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016) (internal quotation marks omitted), *aff'd*, 683 F. App'x 33 (2d Cir. 2017). As such, even if Rule 11 has been violated, imposing sanctions is a matter for the Court's discretion. *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012)).

## ANALYSIS

I.   The Motion to Dismiss the FCRA Claim Against Defendant

The FCRA was enacted in "1970 to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA, as part of this objective, "places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Lichtman v. Chase Bank USA, N.A.*, No. 18-CV-10960, 2020 WL 1989486, at *3 (S.D.N.Y. Apr. 27, 2020) (quoting *O'Diah v. New York City*, No. 02-CV-00274, 2002 WL 1941179, at *12 (S.D.N.Y. Aug. 21, 2002)). Here, Plaintiff's theory of liability against Defendant is based on the latter's role as "a furnisher of information as contemplated by the FCRA." (FAC ¶ 4 (internal quotation marks omitted)); *see also* 16 C.F.R. § 660.2(c). Defendant does not dispute this characterization.

Defendant argues that Plaintiff has failed to state a claim under the FCRA because: (1) Plaintiff lacks Article III standing; (2) Plaintiff tries improperly to cast non-actionable violations under § 1681s-2(a) as violations of § 1681s-2(b); (3) Plaintiff did not identify the investigation's failures and, in any event, the reporting was accurate; (4) Plaintiff failed to plead damages; and (5) Defendant is not responsible for any other entity's reporting. (*See* Dismiss Br. at 8-12).

The Court addresses the arguments *seriatim*.

A.   Article III Standing

The Court, as guided by precedent, turns first to Defendant's argument regarding the lack of subject-matter jurisdiction and dismissal mandated under Rule 12(b)(1).

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of

9

standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (internal citation omitted).

"Where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over

such claim." *Zlotnick v. Equifax Info. Servs., LLC*, No. 21-CV-07089, 2022 WL 351996, at *2

(E.D.N.Y. Feb. 3, 2022). Standing, as reiterated recently by the Supreme Court, requires that:

> a plaintiff must show (i) that he suffered an injury in fact that is
> concrete, particularized, and actual or imminent; (ii) that the injury
> was likely caused by the defendant; and (iii) that the injury would
> likely be redressed by judicial relief. If the plaintiff does not claim
> to have suffered an injury that the defendant caused and the court
> can remedy, there is no case or controversy for the federal court to
> resolve.

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (internal citations and quotation marks

omitted). In short: "No concrete harm, no standing." *Id*. at 2200.

At the motion to dismiss "stage, standing allegations need not be crafted with precise detail,

nor must the plaintiff prove the allegations of his injury." *Fin. Guar. Ins. Co. v. Putnam Advisory

Co., LLC*, 783 F.3d 395, 401-02 (2d Cir. 2015) (quoting *Baur v. Veneman*, 352 F.3d 625, 631 (2d

Cir. 2003)). Rather, to survive a motion to dismiss for lack of subject-matter jurisdiction, Plaintiff

need only "allege facts that affirmatively and plausibly suggest that [he] has standing to sue."

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *see also Franklin v.

Whole Foods Mkt. Grp., Inc.*, No. 20-CV-04935, 2022 WL 256460, at *8 (S.D.N.Y. Jan. 26, 2022)

("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct

may suffice, although the factual allegations must be sufficient to put injury-in-fact into the realm

of plausible." (internal citations and quotation marks omitted)).

Plaintiff has alleged plausibly that he was injured by Defendant's conduct by stating that

he "suffered injury to his credit worthiness and increased difficulty obtaining credit," specifying

that these injuries "include[d] higher interest rates[] and difficulty obtaining a mortgage," and

complaining that he also endured "embarrassment, humiliation, and other emotional injures as a result of the errors on her [sic] credit report" occasioned by Defendant's flawed investigation. (FAC ¶¶ 41-42). These allegations are sufficient, at this stage, to plead injury. *See, e.g.*, *Artemov v. TransUnion, LLC*, No. 20-CV-01892, 2020 WL 5211068, at *6 (E.D.N.Y. Sept. 1, 2020) (noting, with respect to Article III standing, that "[t]he denial of credit and other similarly adverse consequences are often the basis for FCRA damages"); *Doe v. City of New York*, No. 18-CV-00670, 2018 WL 3824133, at *14 (E.D.N.Y. Aug. 9, 2018) (observing that, generally, "[e]motional distress . . . is a concrete harm sufficient to meet the injury-in-fact requirement for Article III standing"); *see also Haynes v. Transunion, LLC*, No. 19-CV-07157, 2021 WL 3185581, at *4 (E.D.N.Y. July 28, 2021) (denying motion to dismiss for lack of standing and observing that defendants' arguments were "factual, not legal . . . more about *Twombly*'s pleading requirements than standing"); *Meyers v. PNC Fin. Servs. Grp., Inc.*, No. 19-CV-01892, 2020 WL 7645436, at *10 (D. Conn. Dec. 23, 2020) (concluding that plaintiff pled a claim for relief with "cognizable damages" by claiming that, *inter alia*, a "corresponding decrease in credit score" harmed his business and prevented him from refinancing his home).

### B. No Private Right of Action Under § 1681s-2(a)

The duties imposed upon a furnisher by § 1681s-2(a) of the FCRA "detail[] a furnisher's responsibility to provide accurate information, including a duty to refrain from knowingly reporting inaccurate information, and to correct information discovered to be inaccurate." *Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 98 (2d Cir. 2020) (internal citations omitted). That portion of the FCRA prohibits a furnisher from reporting information to a consumer reporting agency when: (1) it "knows or has reasonable cause to believe that the information is inaccurate;" or (2) it "has been notified by the consumer" that the information is inaccurate and "the information

11

is, in fact, inaccurate." 15 U.S.C. §§ 1681s-2(a)(1)(A)-(B). Where a consumer disputes the completeness or accuracy of information, the furnisher "may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3). There is no private cause of action against a furnisher for violation of its § 1681s-2(a) duties. 15 U.S.C. § 1681s-2(d); *see also Sprague*, 969 F.3d at 98-99 ("As the district court correctly concluded, the FCRA does not provide a private cause of action for violations of Section 1681s-2(a)."); *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("Thus, the district court correctly concluded, as many other courts have held, that there is no private cause of action for violations of § 1681s-2(a)."); *Lichtman*, 2020 WL 1989486, at *4 (explaining that, under the plain language of the FCRA itself, "§ 1681s-2(a) shall be enforced exclusively by government agencies and officials"). The parties agree on this premise. (Dismiss Br. at 7-8; Dismiss Opp. at 11).

Notwithstanding the parties' agreement—and precedent making it crystal clear— Defendant argues that Plaintiff seeks to enforce § 1681s-2(a) because he complains that Defendant: (1) failed to mark the account as disputed; and (2) continued to report inaccurate information. (Dismiss Br. at 7-8; *see also* FAC ¶¶ 20, 34-35). Plaintiff counters that these actions were "both misleading and materially incomplete," thereby violating § 1681s-2(b). (Dismiss Opp. at 17-18). Plaintiff's position is unconvincing. As Plaintiff acknowledges, § 1681s-2(a) governs the "duty to provide accurate information" while § 1681s-2(b) concerns what a furnisher must do after "receiv[ing] notice of a dispute" from a consumer. (*Id*. at 10-11). Were the Court to allow such a violation to proceed under the guise of a § 1681a-2(b) violation, it would create an end-run around the clear language of the statute and permit a private cause of action for conduct *specifically enumerated* under § 1681a-2(a). *See* 15 U.S.C. § 1681-2(a)(3) (prohibiting a furnisher from

providing disputed "information to any consumer reporting agency without notice that such information is disputed by the consumer"). That, this Court will not do. Consequently, to the extent that Plaintiff intends to proceed against Defendant on the theory that failing to mark his account as disputed and continuing to report it without that notation are actionable (i.e., FAC ¶¶ 20, 34-35), those theories are dismissed as non-actionable duties imposed upon furnishers by § 1681s-2(a). *See Lichtman*, 2020 WL 1989486, at *6 (accepting the argument that "even if Chase had failed to mark Plaintiff's account as disputed . . . no private cause of action exists for such a violation"); *see also Howard v. Mun. Credit Union*, No. 05-CV-07488, 2008 WL 782760, at *7 (S.D.N.Y. Mar. 25, 2008) ("[T]he main thrust of Plaintiff's allegations is that the MCU proffered fraudulent information to the three major credit reporting agencies . . . . This could implicate the duty of accurate reporting, set out in subsection 1681s-2(a) of the FCRA, but . . . Plaintiff cannot maintain a claim . . . under that provision."); *Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475, 2002 WL 31106934, at *1 (S.D.N.Y. Sept. 20, 2002) (dismissing plaintiff's claim that defendants failed to update his credit reports as it constituted a violation of § 1681s-2(a)).

C.  <u>Accuracy of the Information and Failures of Investigation Under § 1681s-2(b)</u>

Under 15 U.S.C. § 1681s-2(b), after a furnisher is notified by a consumer reporting agency that a consumer disputes information in a credit report, "the furnisher must conduct an investigation, review relevant information provided by the [consumer reporting agency], report the results of the investigation to the [consumer reporting agency], report any inaccuracies to all other consumer reporting agencies to which the information was provided, and promptly modify, delete, or block the reporting of that information." *Lieberman v. Am. Express Co.*, No. 19-CV-06989, 2020 WL 5517271, at *2 (E.D.N.Y. Sept. 14, 2020). To state a claim against a furnisher under that provision, "a consumer must show that (1) a furnisher received notice of a credit dispute from a

[credit reporting agency] (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Ngambo v. Chase*, No. 20-CV-02224, 2020 WL 1940553, at *3 (S.D.N.Y. Apr. 22, 2020) (quoting *Jackling v. HSBC Bank USA, N.A.*, No. 15-CV-06148, 2019 WL 162743, at *4 (W.D.N.Y. Jan. 10, 2019) (alterations in original)); *see also Lieberman*, 2020 WL 5517271, at *2 ("A claim is stated under § 1681s-2(b) only if a plaintiff can show that: (1) the furnisher received notice of a credit dispute from a [credit reporting agency]; and (2) the furnisher then acted in willful or negligent noncompliance with the statute." (internal quotation marks omitted)). The cornerstone of a claim under 15 U.S.C. § 1681s-2(b) is that the subject information was inaccurate; if the information was not inaccurate, there can be no FCRA violation. *See Lieberman*, 2020 WL 5517271, at *3; *Lichtman*, 2020 WL 1989486, at *4; *Gestetner v. Equifax Info. Servs. LLC*, No. 18-CV-05665, 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019). To be "inaccurate" under the FCRA, the information must be either "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Fitzgerald v. Chase Home Fin., LLC*, No. 10-CV-04148, 2011 WL 9195046, at *10 (S.D.N.Y. Feb. 28, 2011) (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998)); *see also Lieberman*, 2020 WL 5517271, at *3; *Lichtman*, 2020 WL 1989486, at *4.

Plaintiff complains that both Defendant and PHH reported one late payment on different account numbers, thereby making it appear that Plaintiff made a late payment on two separate accounts. (*See* FAC ¶¶ 7-13). It is plausible that such information would, and did, adversely affect credit decisions and his ability to secure a mortgage. *Cf. Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) (denying motion to dismiss where the defendant reported information that was "technically true" but "selective," thereby raising an issue as to whether the information reported could "be expected to adversely affect credit decisions" (internal

quotation marks omitted)); *Jenkins v. Chase Bank USA, N.A.*, No. 14-CV-05685, 2015 WL 4988103, at *8-9 (E.D.N.Y. Aug. 19, 2015) (denying motion to dismiss FCRA claim premised on defendant's claiming two non-existent debts).

Turning to Plaintiff's allegations vis-à-vis the reasonableness of Defendant's investigation, he pled that: (1) he made a late mortgage payment in December 2018; (2) at some point before or after that payment, Defendant transferred servicing of the mortgage account to PHH; (3) either Defendant or PHH provided inaccurate information to Experian by reporting a late mortgage payment on the same debt, thereby making it appear that he made two late payments instead of one; (4) he notified Experian of the error; (5) Experian notified Defendant about the error; (6) after being informed of the error, Defendant failed to conduct a reasonable investigation and continued reporting the late payment; and (7) Experian thereafter continued reporting that both Defendant and PHH received late payments. (FAC ¶¶ 8, 10-11, 14-16, 18). These allegations "are sufficient to allege that Defendant acted in willful or negligent noncompliance of the FCRA." *Hart v. Equifax Info. Servs. LLC*, No. 19-CV-00342, 2019 WL 4757325, at *5 (N.D.N.Y. Sept. 30, 2019); *see also Friedman v. CitiMortgage, Inc.*, No. 18-CV-11173, 2019 WL 4194350, at *4 (S.D.N.Y. Sept. 3, 2019) ("At this early stage of the case, plaintiff's allegations, though sparse, are sufficient."). While such allegations may seem factually bare, "[i]nformation about the precise nature of the investigation is uniquely in the hands of [Defendant]. Plaintiff[] cannot be expected to have much more information about the reasonableness of the investigation at this stage of the litigation than [he] has stated in [his] complaint." *Williams v. Bayview Loan Servicing*, *LLC*, No. 14-CV-07427, 2016 WL 8711209, *6 (E.D.N.Y. Jan. 22, 2016).

Defendant's motion to dismiss based on the fact that the information was actually correct and that Plaintiff failed to specify how the investigation was unreasonable is, accordingly, denied.

D. <u>Damages</u>

The damages available to Plaintiff depend upon whether he pursues a theory of willful or negligent violation of the FCRA. If Plaintiff proceeds on a willful violation, he may seek actual damages, statutory damages, punitive damages, costs, and attorneys' fees. 15 U.S.C. § 1681n(a). If, however, Plaintiff presses a negligent violation, damages are limited only to actual damages, costs, and attorneys' fees. 15 U.S.C. § 1681o(a); *see also Aghaeepour v. N. Leasing Sys., Inc.*, No. 14-CV-05449, 2015 WL 7758894, at *11 (S.D.N.Y. Dec. 1, 2015) ("It is well settled that a complaint alleging a claim for negligent violation of the FCRA under § 1681o must allege actual damages."). Plaintiff proceeds under both theories, alternatively. (FAC ¶¶ 43-44).

"Actual damages under the FCRA may include a denial of credit, as well as humiliation and mental distress, even in the absence of out-of-pocket expenses." *Friedman*, 2019 WL 4194350, at *4 (internal quotation marks omitted). However, facts sufficient to establish the existence of actual damages must be contained in the complaint. Here—allowing Plaintiff the benefit of every inference, as is required at this stage—Plaintiff alleged that the inaccurate information impacted his credit score, resulted in "higher interest rates and difficulty obtaining a mortgage" (i.e., after disclosure of inaccurate information to a third-party), and caused "embarrassment, humiliation, and other emotional injuries as a result of the errors on her [sic] credit report . . . ." (FAC ¶¶ 41-42). Although excruciatingly thin, these facts are sufficient to withstand Defendant's motion to dismiss. *See, e.g., Haynes*, 2021 WL 3185581, at *5 ("First, although threadbare, Plaintiff's allegations of emotional distress are sufficient to survive a motion to dismiss." (internal quotation marks omitted)); *Jenkins*, 2015 WL 4988103, at *9 ("[T]he allegations . . . that plaintiff suffered actual damages in the form of emotional distress and a denial of credit by a third-party based on information contained in his credit report are sufficient, at this stage, to allege actual damages and

16

withstand defendant's motion to dismiss."); *Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 400 (S.D.N.Y. 2014) (finding damages pled sufficiently where the plaintiff alleged that he "suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and lowering of credit lines, and having to pay higher auto insurance premiums" (internal quotation marks omitted)).

Defendant's motion to dismiss based on the sufficiency of Plaintiff's purported damages is, consequently, denied.

### E.  Defendant's Responsibility for Other Entities' Violations of the FCRA

Defendant's final argument is that dismissal is necessary because it "does not report PHH's information[] and is not responsible for what PHH itself reports." (Dismiss Br. at 10). That may well be, but the Court does not and need not consider this argument because it is premature. In order for the Court to reach the result Defendant advocates—i.e., dismissal of the claim against it—the Court would have to start with the assumption that Defendant's reporting was accurate. That conclusion requires also that the Court assume that Defendant's reporting occurred before PHH's reporting. Making these factual assumptions on a motion to dismiss is wholly improper.

The question before this Court is whether Plaintiff has pled his claim against Defendant plausibly; and the answer to that question is yes. While the reality of this Court's limited inquiry at this stage necessitates the result obtained herein, Defendant may revisit the arguments pressed in support of its motion to dismiss on a motion for summary judgment after the close of discovery.

### II.  The Motion for Sanctions

Defendant's motion for sanctions contends that Plaintiff's counsel should be sanctioned because: (1) he did not conduct a reasonable investigation before filing the action; (2) he filed the First Amended Complaint knowing allegations therein to be false; (3) the First Amended

17

Complaint, insofar as it suggests Defendant is liable for the conduct of another entity, is frivolous; and (4) he acted in bad faith. (Sanction Br. at 6-9). Given the conclusions reached thus far, the Rule 11 relief sought by this motion simply cannot be granted.[2]

Defendant's arguments supporting sanctions are belied by the Court's adjudication of the motion to dismiss. *See generally Litras v. PVM Int'l Corp.*, No. 11-CV-05695, 2013 WL 4118482, at *12 (E.D.N.Y. Aug. 15, 2013). The motion is, therefore, denied. If, however, Defendant can establish after discovery that Plaintiff's "factual allegations are false, and were known to be false at the time of the filing of the complaint, or that any other grounds for sanctions exist, then [it] can renew [its] motion for sanctions at that time." *Id*. [3]

## CONCLUSION

For the reasons outlined above, Defendant's motion to dismiss is GRANTED only to the extent that any claims predicated on a violation 15 U.S.C. § 1681s-2(a) may not proceed. The motion to dismiss is otherwise DENIED. Defendant's motion for sanctions is likewise DENIED.

---

[2] Plaintiff's counsel argues in opposition that "if sanctions are to be awarded at all . . . [they should be] awarded against Defendant's counsel for the instant motion in the amount of attorneys' fees and costs for Plaintiff's response." (Sanction Opp. at 1). The Court declines to consider this procedurally improper request and notes further that the needlessly combative tone of the parties' submissions is unacceptable. Notwithstanding any personal animosity that may exist between the parties or counsel, counsel are, first and foremost, officers of the Court and shall be guided accordingly.

[3] Filed as an attachment to Defendant's reply memorandum of law in further support of its motion for sanctions was a declaration from an associate in Defendant's counsel's law firm. (Doc. 52-1). The declaration annexed a copy of a document purporting to be the credit report issued by Credit Plus in September 2020 that put Plaintiff on notice that Defendant and PHH were both reporting a late payment. (Doc. 52-1; Doc. 52-2). Defendant's counsel represents that it received this document in September 2021 (i.e., after the motion papers were filed but before the deadline for reply papers). (Doc. 52-1 ¶ 6). This document, according to Defendant, reflects clearly that it and PHH are reporting information about the same loan. (*See* Sanction Reply at 5-6). The Court declines to consider this argument for at least three reasons. First, it appears, on its face, to be nothing more than an attempt at securing ultimate relief (i.e., dismissal) and adjudication of a central fact (i.e., inaccuracy) by way of hearsay. Second, although Defendant's counsel avers that this is the very credit report referenced in the First Amended Complaint, there is no indication that Plaintiff's counsel did or did not see it before filing the pleading. Third, this argument was presented by Defendant's attorney—because of the ongoing exchange of discovery—for the first time in reply. Certainly, in all, the shoddy presentation of this document eliminates its utility at this juncture.

Defendant is directed to file its Answer within fourteen days of the filing of this Memorandum Opinion and Order.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 39 and Doc. 43.

**SO ORDERED:**

Dated:    White Plains, New York
          February 23, 2022

_____
PHILIP M. HALPERN
United States District Judge