UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHAIM B. TESCHER,

               Plaintiff,

-against-

EXPERIAN INFORMATION SOLUTIONS, INC.,

               Defendant.

**OPINION & ORDER**

21-CV-02266 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

    Chaim B. Tescher ("Plaintiff") commenced this action against Experian Information Solutions Inc. ("Experian" or "Defendant") on March 16, 2021. (Doc. 1, "Compl."). Plaintiff alleges in the First Amended Complaint, the operative pleading, that Defendant violated Sections 1681e(b) and 1681i(a) of the Fair Credit Reporting Act.[1] (Doc. 25, "FAC" (citing 15 U.S.C. §§ 1681e(b), 1681i(a)). Discovery closed on February 13, 2023. (Doc. 84).

    Before the Court is Defendant's motion for summary judgment. Defendant filed the motion on September 12, 2023 pursuant to the briefing schedule set by the Court. (Doc. 134; Doc. 135, "Def. Br."; Doc. 136, "Tobitsch Decl."; Doc. 137, "Cave Decl."). Plaintiff filed his opposition (Doc. 138, "Pl. Br."; Doc. 139, "Zemel Decl."; Doc. 140, "Pl. Decl."; Doc. 141, "Hendricks Decl."; Doc. 142, "Gollaher Decl."; Doc. 143), Defendant filed its reply (Doc. 144, "Reply"; Doc. 145, "Weinstein Decl."), and the motion was fully submitted with the filing, with the Court's leave, of Plaintiff's sur-reply (Doc. 154, "Sur-Reply").

    For the reasons set forth below, Defendant's motion for summary judgment is GRANTED.

---

[1] Plaintiff initially named PHH Mortgage Services ("PHH"), Credit Plus Inc. ("Credit Plus"), and LoanDepot.com LLC ("Loan Depot") as defendants to this action. (Doc. 25). The Court subsequently endorsed stipulations which dismissed PHH, Credit Plus, and Loan Depot with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). (Doc. 76; Doc. 86; Doc. 104).

## **BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the motion for summary judgment and draws them from the pleadings, the Rule 56.1 Statement and responses thereto (Doc. 129, "56.1 Stmt."), and the admissible exhibits proffered on this motion. Unless otherwise indicated, the facts cited herein are undisputed.

### I. Duplicative Reporting of Plaintiff's Late Payment

Plaintiff obtained a mortgage loan on August 9, 2018 (the "Loan") with Loan Depot (the "Loan Depot Account"), and Loan Depot reported the Loan Depot Account and payments thereon to Experian. (56.1 Stmt. ¶ 3). In December 2018, Plaintiff was 30 days late on the Loan Depot Account (the "Late Payment"). (*Id.* ¶ 4). Loan Depot transferred the servicing of the Loan on July 1, 2019 to PHH Mortgage Services ("PHH"), who began reporting the Loan under a new account to Experian (the "PHH Account"). (*Id.* ¶ 5). After the servicing of the Loan was transferred to PHH, Loan Depot reported to Experian that the Loan Depot Account had been transferred and closed and Experian updated the reporting of the Loan Depot Account to reflect that change. (*Id.* ¶ 6). PHH began reporting, after the Loan was transferred, Plaintiff's payments on the Loan to Experian. (*Id.* ¶ 7). PHH, at the time of transfer, also reported to Experian part of the payment history from when the Loan was serviced by Loan Depot, including the Late Payment. (*Id.* ¶ 8).

Plaintiff applied for a mortgage loan refinancing from originator Everest Equity (the "Loan Application") in September 2020 for a property located at 1548 51st Street, Brooklyn, New York 11219 (the "Property"). (*Id.* ¶ 10). Everest Equity and Arc Home, LLC approved the Loan Application for the Property on October 6, 2020 on the terms Plaintiff sought, with the exception that the loan at the time of closing in November 2020 was for a higher loan amount than Plaintiff sought in the Loan Application. (*Id.* ¶ 11). Plaintiff closed the loan with an interest rate of 3.635%.

(Pl. Decl. ¶ 3). Plaintiff testified at his deposition that he was denied an auto loan from Hershey's Auto in Monroe, New York in either 2019 or 2020. (Tobitsch Decl., Ex. 17 at 108:7-23). He was told by the car dealership that he could not obtain an auto loan because of his credit, and so Plaintiff's wife purchased the car instead. (*Id.*). Plaintiff does not recall if the car dealership mentioned Experian at all when they denied him an auto loan and he does not have any documents memorializing the dealership's decision to deny him an auto loan. (*Id.* at 111:19-20; 112:10-20).

II.     The First Dispute

Plaintiff discovered, in September 2020, that the Loan Depot Account (which was closed) and the PHH Account (which was open) both were reporting the Late Payment for the Loan in their respective payment history sections. (56.1 Stmt. ¶ 17). On October 13, 2020, Plaintiff disputed the status of the PHH Account through Experian's online portal ("First Dispute Letter"). (*Id.* ¶ 18). The dispute read: "Payment Never Late." (*Id.* ¶ 19). The dispute form also stated: "Consumer requests removal of late notations on this account. Consumer Loan Services were transferred between Loan Depot and PHH Mortgage Svcs. Both accounts are reporting lates." (*Id.*). Experian communicated the dispute to PHH via an Automated Consumer Dispute Verification ("ACDV") form, and PHH responded to the ACDV form but did not make any changes to the payment history report. (*Id.* ¶¶ 20-21). On November 3, 2020 Experian communicated PHH's response, via letter sent through U.S. Mail, to the ACDV form to Plaintiff. (*Id.* ¶ 22).

III.    The Second and Third Disputes

Experian received a letter from Plaintiff on October 20, 2020 ("Second Dispute Letter") which read: "My loan services were transferred between LoanDepot and PHH Mortgage Services but both accounts . . . are reporting simultaneous lates." (*Id.* ¶ 23). Experian communicated Plaintiff's second dispute letter to PHH via ACDV on October 23, 2020, and PHH responded to

3

the ACDV and directed Experian to update the status of the PHH Account to Paid/Never Late. (*Id.* ¶¶ 24-25). Experian processed PHH's response and updated the reporting of the PHH Account as "Paid, Closed/Never Late" on November 9, 2020 and notified Plaintiff of this change in status via U.S. Mail. (*Id.* ¶¶ 26-27). Experian received a letter from Plaintiff on October 29, 2020 ("Third Dispute Letter") which was identical to the Second Dispute Letter. (*Id.* ¶ 28). The Third Dispute Letter did not provide any additional information regarding the PHH Account, and Experian therefore did not send a new ACDV to PHH in accordance with its policies. (*Id.* ¶ 29). Experian corrected the reporting of the PHH Account to the status that Plaintiff had requested within 30 days of receipt of all three of Plaintiff's disputes. (*Id.* ¶ 30).

    IV.    <u>Plaintiff's Claim for Relief</u>

Plaintiff alleges that Experian "negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b)." (FAC ¶ 27). Plaintiff further alleges that Experian, after receiving Plaintiff's dispute letters, "negligently and willfully failed to conduct a reasonable investigation in violation of 15 U.S.C. § 1681i(a)." (*Id.* ¶ 28). As a result of Experian's alleged violations of the Fair Credit Reporting Act, Plaintiff alleges that he has "suffered injury to credit worthiness and increased difficulty obtaining credit" including "higher interest rates, and difficulty obtaining a mortgage." (*Id.* ¶ 29). Plaintiff also alleges that he has "suffered embarrassment, humiliation, and other emotional injuries." (*Id.* ¶ 30).

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the

4

outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[2] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. Cty. of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)) ("the party opposing summary judgment must present competent evidence that creates a genuine issue of material fact).

The Court's duty in adjudicating motions for summary judgment is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. *Porter v. Dartmouth-Hitchcock Med. Ctr.*, No. 92 F.4th 129, 147 (2d Cir. 2024) ("[T]he court may not make credibility determinations or weigh the evidence." (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010))). The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Further, "while the court is required to review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Porter*, 92 F.4th at 147 (quoting *Kaytor*, 609 F.3d at 545). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

Plaintiff presses one claim for relief, but two theories of liability, against Experian with respect to the duplicative Late Payment reporting: (i) Experian negligently and willfully failed to maintain or follow reasonable procedures to assure maximum possible accuracy of the information it reported in violation of 15 U.S.C. § 1681e(b); and (ii) Experian, after receiving Plaintiff's dispute letters, negligently and willfully failed to conduct a reasonable investigation in violation of 15 U.S.C. § 1681i(a). The Court will address each claim for relief in turn.

> I. Defendant's Request to Exclude Evidence

Defendant, in reply, requests that the Court exclude four documents that Plaintiff relies on in his opposition: (i) the affidavit of Plaintiff's wife, Hinda Tescher (Doc. 143), (ii) the declaration of PHH senior manager Mariana Gollaher (Doc. 142), (iii) the expert report of Evan Hendricks (Doc. 139-1), and (iv) the declaration of Evan Hendricks (Doc. 141).

With respect to the affidavit of Hinda Tescher and the declaration of Evan Hendricks, the Court does not rely on these documents in reaching its rulings. Mrs. Techer, in her declaration, describes Plaintiff's emotional injuries and explains that she had to purchase a vehicle in her name when Plaintiff was denied an auto loan. (Doc. 143). Mr. Hendricks, in his declaration, states that Experian issued a credit report between October 13, 2020 and November 9, 2020 and that mortgage lenders and auto loan lenders receive such credit reports to make decisions regarding loan applications. (Doc. 141). These declarations are submitted in support of Plaintiff's arguments related to causation and damages, issues that the Court need not and does not reach given the conclusions regarding liability reached herein. Accordingly, the Court denies Defendant's request to exclude the affidavit of Hinda Tescher and the declaration of Evan Hendricks as unnecessary.

Defendant argues that the Court give "limited or no weight at all" to the expert report of Evan Hendricks because "they were copied from his report for Steele Bray, a prior unrelated matter involving different facts where Hendricks was retained by the same counsel." (Reply at 2). Mr. Hendricks admitted at his deposition that the expert report he initially produced contained information from a prior case. (Weinstein Decl., Ex. 6 at 90:5-93:9). Although Mr. Hendricks subsequently produced an amended expert report, the same errors persist in the amended report. (*Compare* Doc. 145-3 (original Hendricks report) *with* Doc. 145-5 (amended Hendricks report)). For instance, the amended report continues to refer to Santander Bank as a defendant to this action. (Doc. 145-5 at 1). Mr. Hendricks testified at his deposition that he did not revise the substantive analysis in the amended expert report. (Doc. 145-6 at 101:5-107:19). While the Court certainly "takes into consideration the various indicia of sloppiness and carelessness" in the expert report, including the fact that portions of the expert report were copied from an unrelated case, it declines to exclude the report from consideration. *Solorio v. Asplundh Tree Expert Co.*, No. 02-CV-08035, 2009 WL 755362, at *4 (S.D.N.Y. Mar. 23, 2009). Accordingly, while the Court considers the expert report, the Court places little to no weight on its value in the resolution of this matter.

Defendant next argues that the declaration of Miarana Gollaher "should be excluded because Plaintiff waited eight months to serve it for the first time with his opposition brief on August 21, 2023." (Reply at 2; *see also* Weinstein Decl. ¶ 30 ("On March 1, 2023, 2 months after the close of fact discovery, Mr. Zemel served a copy of the Declaration of Mariana D. Gollaher on counsel for Experian.")). Defendant further argues that it "had no opportunity to take discovery of PHH related to the statements made in the declaration because it was served after the close of fact discovery." (Weinstein Decl. ¶ 33). Plaintiff argues that Ms. Gollaher "may have executed the [declaration] in December" that "counsel for PHH failed to produce the declaration to Plaintiff

until March 1, 2023." (Sur-Reply at 2). Plaintiff further argues that Ms. Gollaher's declaration does not contain any new information that would prejudice Defendant because Defendant attended the deposition of PHH's corporate representative, which included testimony covering the same subject matter as Ms. Gollaher's declaration, but Defendant chose not to ask any questions. (*Id.* at 2-3).

During discovery, and specifically on January 12, 2022, Experian requested from Plaintiff "[a]ll files, correspondence, notes, records or other Documents . . . regarding the subject matter of this action" as well as documents "which Plaintiff may introduce into evidence at trial or at any deposition in this matter." (Doc. 136-13). Ms. Gollaher's declaration is plainly responsive to each of these requests but was not produced to Defendant until two months after the close of fact discovery. Plaintiff cannot shift the blame for his failure to produce Ms. Gollaher's declaration to PHH. It was his responsibility to timely obtain responsive discovery and produce it to the opposing party. Plaintiff's failure to produce Ms. Gollaher's declaration until after the close of fact discovery is grounds for the exclusion of that declaration. *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 608 (S.D.N.Y. 2004) ("It was unfair to the defendant for the plaintiff to cobble together the evidence needed to oppose summary judgment only after the date specified by Magistrate Judge Maas for the close of expert discovery, and only after the defendant had submitted his motion for summary judgment."); *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16-CV-01267, 2018 WL 3407709, at *3 (S.D.N.Y. Jan. 12, 2018) ("Defendant argues that highly probative evidence produced eight months after the close of fact discovery and two months after the exchange of Local Rule 56.1 Statements should be stricken because it deprives Defendant of the ability to investigate or rebut the evidence. The Court agrees. The late production, whether two months late or eight months late, prevents Defendant from inquiring at a deposition or otherwise investigating the

evidence."). Defendant was, because of Plaintiff's belated production, unable to take the deposition of Ms. Gollaher to test the statements made in her declaration. That Defendant had the opportunity to participate in the deposition of another PHH employee as a Rule 30(b)(6) witness does not cure the prejudice it suffered. Accordingly, the Court grants Defendant's request to exclude and hereby excludes the declaration of Mariana Gollaher.

II. 15 U.S.C. § 1681e(b)

Section 1681e(b) of the Fair Credit Reporting Act provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). "To succeed on a claim under this section, a plaintiff must establish that: (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-03760, 2013 WL 1430467, at *6 (S.D.N.Y. Apr. 8, 2013) ("Summary judgment is merited in favor of both Trans Union and Experian here, because [plaintiff] has adduced no evidence to suggest that either defendant failed to follow reasonable procedures in preparing her credit report") (citing *Gorman v. Experian Info. Solutions, Inc.*, No. 07-CV-01846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008)). "Even if the information contained in the challenged credit report is inaccurate, a credit reporting agency is not held strictly liable under the FCRA merely for reporting it; rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report." *Id.* (citing *Whelan v. Trans Union Credit Reporting Agency*, 862 F.Supp. 824, 829 (E.D.N.Y. 1994)).

The issue before the Court is whether Experian followed "reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b). The credit reporting agency in *Podell v. Citicorp Diners Club, Inc.*, received erroneous information from creditors regarding the plaintiff's indebtedness. 112 F.3d 98, 105 (2d Cir. 1997) (affirming a district court's decision granting summary judgment in favor of a credit reporting agency on a Section 1681e(b) claim). The Second Circuit held that the credit reporting agency "did not breach its duties under the FCRA" and that the credit reporting agency "was entitled to report [plaintiff's indebtedness], at least until it heard from him directly." *Id*. Here, Experian relied on the erroneous payment history information it received from PHH. "[T]he FCRA 'does not hold a reporting agency responsible where an item of information, received from a source that it reasonably believes is reputable, turns out to be inaccurate unless the agency receives notice of systemic problems with its procedures.'" *Wenning v. On-Site Manager, Inc.*, No. 14-CV-09693, 2016 WL 3538379, at *18 (S.D.N.Y. June 22, 2016) (quoting *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004)).

Plaintiff argues that "Experian failed to follow its own procedures, or implement other reasonable practices, meant to determine that the accounts were duplicative." (Pl. Br. at 5). Whether or not Experian had or followed policies related to duplicate accounts is irrelevant to this case because Plaintiff did not complain of the reporting of duplicate accounts. Plaintiff's First Dispute Letter and Second Dispute Letter both note that "the late payments are being reported twice **on two different accounts**." (Tobitsch Decl., Ex. 6; *Id.*, Ex. 8). Experian's policy regarding duplicate accounts provides a list of examples "for what may not be considered a duplicate account," including "[d]ifferent credit grantors, but same debt." (Weinstein Decl., Ex. 2). That is precisely the situation here, where the same debt was transferred from LoanDepot to PHH. (56.1 Stmt. ¶ 5). Experian's duplicate account policy therefore does not govern a transferred debt. (Reply

11

at 10 ("Experian's 30(b)(6) witness also acknowledged [the duplicate accounts] policies, but stated that these are not duplicate accounts and so the policies don't apply.")

Experian's handling of a transferred loan, like the one at issue in this action, is governed instead by the Credit Reporting Resource Guide ("CRRG") which "provides instructions to data furnishers on how to report credit data in order to promote accuracy, integrity, and consistency across the industry." (Cave Decl. ¶¶ 20-21). Plaintiff's expert, Evan Hendricks, states in his expert report that the CRRG "sets forth the industry standards for participants in the credit reporting industry." (Zemel Decl., Ex. A at 6). The CRRG guidelines provides two options for the reporting of transferred loans. (*Id.*). The first option allows the new loan servicer to take over reporting of the entire account history. (*Id.*). The second option, which PHH chose in the instant case, allows for the first account (LoanDepot) to report as transferred and the second account (PHH) to report as open. (*Id.*). The CRRG guidelines to not suggest that the credit reporting agency has an independent obligation to verify the status of a transferred loan. The case law is in accord. "Courts have consistently held . . . that a [credit reporting agency] does not violate its duty to assure reasonable accuracy pursuant to Section 1681e(b) simply by reporting an inaccurate debt or judgment, absent prior reason to believe that its source was unreliable." *Frydman v. Experian Info. Sols., Inc.*, No. 14-CV-09013, 2016 WL 11483839, at *12 (S.D.N.Y. Aug. 11, 2016) (collecting cases). The reasonableness of Experian's procedures, with respect to its obligations under Section 1681e(b), therefore turns on whether Experian had reason to believe that the information it received from PHH regarding the Late Payment was unreliable. *Id.*

Plaintiff argues, relying on a declaration submitted by a senior manager at PHH and deposition testimony from the PHH corporate representative, that PHH was an unreliable source of information because the duplicate Late Payment reporting occurred through a software error

which effected "more than 40 people, and likely thousands of other credit reports." (Pl. Br. at 13-14). Defendant argues that Plaintiff has failed to point to any "evidence that placed Experian on notice that PHH was an unreliable reporter prior to the events giving rise to this Complaint." (Def. Reply at 8). Defendant submitted a declaration from Kimberly Cave, Experian's Compliance and Litigation Analyst, which states that Experian has rigorous vetting processes in place and "works with data furnishers to ensure that they supply the most complete and accurate data possible, subjecting all incoming data to numerous systems and checks designed to prevent errors, continually reviewing and refining Experian's computer systems in an ongoing effort to assure the maximum possible accuracy of information in Experian reports." (Doc. 137, "Cave Decl." ¶ 29). Experian's vetting process for data furnishers includes "on-site physical inspections of the furnisher's facilities, audits of the furnisher's credit data, background and business conflict checks, and security checks." (*Id.* ¶ 30). "Before data furnishers are permitted to supply information to Experian, the furnishers must complete the on boarding process, and must execute contracts and data agreements agreeing to comply with the obligations imposed by the FCRA to furnish accurate information and follow industry reporting standards." (*Id.*).

There is no evidence in the record that Experian had any basis to believe that PHH was an unreliable reporter. The deposition testimony of PHH's corporate representative Benjamin Verdooren, which is the evidence Plaintiff relies on to make this argument, does not support his position. (Def. Br. at 12-14). Mr. Verdooren testified at his deposition that the Late Payment should not have been reported by PHH and he went on to testify that he did not know whether this error happened to any other consumers because he "didn't review any other loans brought over by Loan Depot." (Tobitsch Decl., Ex. 19 at 32:1-21). Plaintiff's speculative argument that PHH repeated this error with "thousands of loans" is not supported by either the declaration of Ms. Gollaher or

13

the deposition testimony of Mr. Verdooren. (Pl. Br. at 13). Plaintiff has failed to adduce any evidence which would suggest that PHH had systemic problems with its procedures of reporting the payment histories on transferred loans. Nor does Plaintiff point to any evidence which would suggest that the error that impacted Plaintiff, and possibly forty other transferred loans, occurred to thousands of other consumers. There is no evidence from which a reasonable jury could conclude that Experian was on notice that PHH was an unreliable reporter.[3] Here, as in *Podell*, Experian did not breach its duties under Section 1681e(b) by reporting the information it received from PHH until it heard from Plaintiff directly. 112 F.3d at 105.

Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's claim under 15 U.S.C. § 1681e(b).

### III.    15 U.S.C. § 1681i(a)

Section 1681i(a) of the Fair Credit Reporting Act provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

---

[3] This conclusion would not change even if the Court were to consider the declaration of Mariana Gollaher, which Plaintiff provided to Defendant two months after the close of fact discovery. The declaration of Mariana Gollaher states that PHH utilized a loan servicing software which moved the original data values of a loan from the outgoing loan servicer's interface to the incoming loan servicer's interface in the event of a loan transfer. (Gollaher Decl. ¶¶ 4-5). Both the outgoing loan servicer and PHH utilized the same software, resulting in PHH reporting the Late Payment. (*Id.* ¶ 6). Ms. Gollaher stated that "more than forty loans had the outgoing loan servicer's payment history profile loaded into PHH's [software] interface as part of a service transfer." (*Id.* ¶ 8). Ms. Gollaher does not state that any of those forty transferred loans resulted in duplicate missed or late payments being erroneously reported, nor does she suggest that this error impacted any more than the forty transferred loans she identifies.

14

15 U.S.C. § 1681i(a)(1)(A). "The Second Circuit has not directly addressed what constitutes a 'reasonable reinvestigation' under section 1681i." *Perez v. Experian*, No. 20-CV-09119, 2021 WL 4784280, at *9 (S.D.N.Y. Oct. 14, 2021). "However, courts in this District have noted that 'the parameters of a reasonable investigation will depend on the circumstances of a particular dispute.'" *Id.* (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir. 2010)).

The issue here is whether Experian conducted a reasonable reinvestigation regarding the Late Payment and deleted the duplicate entry in accordance with Section 1681i(a). It is undisputed that Plaintiff submitted the First Dispute Letter to Experian on October 13, 2020 and Experian in turn communicated the entirety of the First Dispute Letter to PHH form that same day. (56.1 Stmt. ¶¶ 18-20). PHH initially told Experian that its reporting of the Late Payment was accurate, and Experian communicated PHH's initial response to Plaintiff on November 3, 2020. (Tobitsch Decl., Ex. 10). Experian received Plaintiff's Second Dispute Letter on October 20, 2020 and Experian again communicated Plaintiff's Second Dispute Letter to PHH on October 23, 2020. (56.1 Stmt. ¶¶ 24-27). Experian, following PHH's response confirming that the Late Payment was reported in error, corrected the payment history report on November 9, 2020, which was 27 days following the submission of Plaintiff's First Dispute Letter. (*Id.*).[4]

Plaintiff argues, without citation to any case law, that each dispute letter triggered a separate duty to investigate and that the Court must analyze "the reasonableness of <u>each investigation</u>." (Pl. Br. at 16 (emphasis in original)). Plaintiff argues that he has established liability under Section 1681i(a) because "there is no question that Experian concluded its reinvestigation on November 3, 2020." (*Id.*). The record clearly contradicts this argument. It is undisputed that

---

[4] Plaintiff also submitted a Third Dispute Letter, which Experian received on October 29, 2020. (56.1 Stmt. ¶ 28). The parties agree that the Third Dispute Letter "was identical to the Second Dispute [Letter], and did not provide any additional information regarding the PHH Account." (*Id.* ¶ 29).

Experian corrected the Late Payment appearing on the PHH Account on November 9, 2020. (56.1 Stmt. ¶¶ 24-27). Plaintiff asks the Court to analyze the First Dispute Letter and Experian's response in a vacuum, without taking into account what Experian did after it responded to the First Dispute Letter. (*Id.* ("This dispute, regardless of what happened afterwards, was unreasonably conducted.")). The text of the statute, however, imposes no such requirement. Here, Plaintiff submitted the Second Dispute Letter on October 20, 2023, two weeks before Experian responded to the First Dispute Letter. There are no facts in the record to conclude, as Plaintiff suggests, that Experian had "concluded its reinvestigation" on November 3, 2020 when it had in fact took corrective action with respect to the Late Payment six days later on November 9, 2020. Plaintiff's argument that the Court should not consider any of Experian's actions that occurred after it sent its initial response letter to Plaintiff on November 3, 2020 has no statutory or case law support. Experian communicated Plaintiff's disputes to PHH, PHH corrected the inaccurate payment history, and Experian reflected that change in its reporting. Experian's investigation revealed that the PHH payment history was inaccurate, and that inaccurate information was deleted from Experian's report. All of this occurred 30 days within Plaintiff's First Dispute Letter. No more is required under Section 1681i(a). Plaintiff has failed to adduce any evidence which would suggest that Experian's reinvestigation here was unreasonable.

Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's claim under 15 U.S.C. § 1681i(a).

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.[5]

---

[5] In light of the rulings herein on liability, the Court need not and does not reach the balance of Defendant's arguments.

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. 134 and close this case.

**SO ORDERED.**

Dated: White Plains, New York
       August 12, 2023

_____
PHILIP M. HALPERN
United States District Judge